**2009 BNH 036**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 08-13704-JMD
                                                                                                  Chapter 7
Evangelos J. Karagianis,
              Debtor


FIA Card Services, N.A.,
              Plaintiff

v.                                                                                              Adv. No. 09-1056-JMD

Evangelos J. Karagianis,
              Defendant


*Marc L. Van De Water*
*Van De Water Law Offices, PLLC*
*Bow, New Hampshire*
*Attorney for Plaintiff*

*Evangelos J. Karagianis*
*Pro se Debtor/Defendant*

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

On March 17, 2009, FIA Card Services, N.A. ("FIA") filed a complaint under

§ 523(a)(2)(A) of the Bankruptcy Code[1] against Evangelos Karagianis (the "Debtor") seeking a

finding that $11,999 in balance transfers and charges that the Debtor put on his credit card

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

should be declared nondischargeable.  The Court held a pretrial hearing on May 20, 2009, and scheduled a trial date for October 27, 2009.  Two days before the pretrial hearing, the U.S. Supreme Court issued its opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), which confirmed that the pleading standards articulated earlier in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), apply not just to antitrust disputes but to all federal civil cases under the Federal Rules of Civil Procedure.  In the time leading up to trial, the Court had more opportunity to consider the implications of Iqbal and to review the complaint in this case.  So before the start of trial the Court raised the issue of whether it should dismiss the complaint for failure to state claim based on Iqbal.  The Court then issued an Order to Show Cause (Doc. No. 14) for why it should not dismiss the complaint and to provide FIA with time to either file a response or an amended complaint.[2]  FIA accordingly filed an amended complaint (Doc. No. 16) (the "First Amended Complaint").  This is the Court's decision on the First Amended Complaint and whether it meets the Iqbal standard.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

---

[2] A trial court may dismiss a complaint on its own initiative, and without an adversary's motion, if the complaint fails to state a claim upon which relief may be granted, provided, however, that the trial court adopts a fair procedure for doing so.  See Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 (1st Cir. 2007).  Generally that means the court must notify the pleader of its intention to grant sua sponte dismissal and permit an opportunity to amend or otherwise respond.  Id.

**A. Pleading standard under Iqbal**

Under Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012(b), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, courts "must accept as true the well-pleaded factual allegations of the complaint" and draw all reasonable inferences in the plaintiff's favor. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must contain more than labels and legal conclusions. Twombly, 550 U.S. at 555. "[Although] legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S.Ct. at 1950. A pleading that offers only a formulaic recitation of the elements of a cause of action must be dismissed. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949.

Thus, a complaint that just pleads facts consistent with a defendant's liability does not carry the day because it "stops short of the line between possibility and plausibility." Id. (quoting Twombly, 550 U.S. at 557). A complaint must now allege facts which will establish a plausible claim for relief. A complaint establishes facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the . . . court to draw on its judicial experience and common sense." Id. at 1950. And although trial courts must take all factual

allegations in the complaint as true, they are not bound to accept as true legal conclusions couched as factual allegations. Id. at 1949-50.[3]

Put differently, to pass the Iqbal standard a complaint must add some meat to the bones and provide some factual context for the Court to infer that the plaintiff has a plausible claim for relief. In addition, in light of the new pleading standards from Twombly and Iqbal, plaintiffs certainly do themselves no favors by drafting complaints that allege facts and legal elements in an incoherent and illogical manner in the hopes that a court will find some basis for a plausible claim by piecing together an impossible puzzle. While judges are tasked with drawing reasonable inferences from the complaint at the motion to dismiss stage, they "are not expected to be mindreaders," and counsel cannot expect the court to do their work; litigants have an obligation to spell out their arguments squarely and distinctly. Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). Indeed, "[a] litigant cannot ignore her burden of developed pleading and expect the [trial] court to ferret out small needles from diffuse haystacks." United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992). In other words, while Iqbal does not require a

---

[3] The Twombly and Iqbal standards are not novel in this Circuit. As the United States District Court for District of New Hampshire recently pointed out:

> [E]ven before Twombly and Iqbal, the [First Circuit] had repeatedly held that a complaint needs more than "bald assertions . . . [or] unsubstantiated conclusions," Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990), overruled on other grounds by Educadores Puertorriguenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004); nor may a plaintiff "rest on subjective characterizations or conclusory descriptions of a general scenario." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); see also Redondo-Borges v. U.S. Dept. of Hous. and Urban Dev., 421 F.3d 1, 9 (1st Cir. 2005) ("The fact that notice pleading governs . . . does not save the plaintiffs' conclusory allegation."); Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (requiring pleadings to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory").

Soukup v. Garvin, 2009 WL 2461687, at *3 (D.N.H. Aug. 11, 2009).

plaintiff's complaint to weave an eloquent narrative fit for a novel, the new standard at least requires some intelligible, factually-developed context to support the legal elements of the cause of action.

    **B. Analysis**

        **1. New facts in the First Amended Complaint**

The only thing different in the First Amended Complaint from the original complaint is that FIA added one new sentence and several subparagraphs to paragraph 14. See First Amended Complaint ¶ 14. The first sentence of paragraph 14 is the same: "Defendant incurred the debts when they had no ability or objective intent to repay them." Id. The new second sentence of paragraph 14 alleges that evidence of the Debtor's inability to pay FIA the charges at the time they were incurred, and his lack of intent to pay the charges at the time he made them is supported by seven specific allegations contained in seven subparagraphs designated as (a) through (g), quoted below:

> (a) Defendant's schedules I & J reflect that Defendant's total monthly income is $0.00 and Defendant's total monthly expenses were $5,590.00, leaving defendant with an ability to pay of - $5,590.00.
>
> (b) Defendant's schedules reflect that at or about the time of the advances in question Defendant had unsecured debts totaling $1,413,739.00.
>
> (c) Prior to filing Defendant's Statement of Financial Affairs shows he was a party to three separate lawsuits, each alleging fraudulent conduct.
>
> (d) Defendant was at the time of the advances in question a party to a suit by Salvatore for some $222,100 invested into defendant's businesses Harvard Auto Sales and/or SOPA[,] LLC, under allegedly false pretenses, and then failed to produce relevant

>documents in the state court litigation. These allegations formed the basis of Adversary Complaint 09-01053.
>
>(e) At the time of Defendant's bankruptcy filing, Defendant was a party to a suit by Automotive Finance Corporation seeking some $371,962.00 in money fraudulently obtained, alleging Defendant through his businesses misrepresented during Lot audits during September [through] November 2008 the correct sale status of vehicles and their proceeds. These allegations formed the basis of Adversary Complaint # 09-01058.
>
>(f) Shortly before filing Defendant exhibited similar behavior regarding his Chase Bank VISA card, against which he drew some $8,335.45 in cash advances in the period shortly before his filing. These charges are the basis of a separate adversary complaint #Chase Bank v Evangelos J. Karagianis Docket #09-01096.
>
>(g) Between September 2008 and October 2008 Defendant through his business Harvard Auto Sales began accepting credit card payments from customers, but not delivering titles to vehicles. These facts formed the basis of Adversary Complaint 09-01101 in which final default judgment was entered against Defendant individually in the amount of $191,378.00.

Id. Subparagraphs (a) and (b) rely on the Debtor's schedules—in particular, his negative monthly income and high level of unsecured debts—to support an inference that he had no ability to pay his creditors at the time he made the charges on his credit card with FIA. Subparagraphs (c) through (g) summarize allegations from complaints in other adversary proceedings, presumably to incorporate those allegations by reference to support an inference that the Debtor had no ability to pay or intent to pay the charges to FIA.

### 2. Elements of a § 523(a)(2)(A) claim

To establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive, i.e., scienter; (3) the debtor

intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance on the false statement caused damage.  McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001); Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).  Under the first element, a debtor's statement of future action is a false representation if, at the time he makes the statement, he did not intend to carry out the stated future action.  Palmacci, 121 F.3d at 786.  If, however, the debtor intended to perform at the time he makes the promise, but he later changes his mind, or intervening events cause him to act otherwise, then there is no false representation.  Id. at 787.  Under the second element, creditors must prove that the debtor made the representation either: (a) knowing or believing that the matter is not as she represents it; (b) without confidence in the accuracy of the representation; or (c) knowing she does not have any basis for the representation.  Id.  Creditors must show fraudulent intent, which requires an actual intent to mislead, more than mere negligence.  Id. at 788.  So an honest belief, however unreasonable, is an insufficient basis for deceit.  Id.  In determining actual fraud, courts examine the totality of the circumstances.  Id. at 789.

### 3. The First Amended Complaint's § 523(a)(2)(A) allegations

First, although subparagraphs (a) and (b) of the First Amended Complaint allege that the Debtor had negative $5,590.00 in monthly income and unsecured debts totaling $1,413,739.00 "at or about the time of the advances," those facts, even if correct, only shed some light on the Debtor's ability to pay the charges.  But the focus in § 523(a)(2)(A) credit card cases is on intent to pay, not ability to pay.  As one court has explained:

> The representation made by the card holder in a credit card
> transaction is not that he has the ability to repay the debt; it is that

> he has an intention to repay.  Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud. . . . [T]he express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt.

AT&T Universal Card Servs. Corp. v. Searle, 223 B.R. 384, 390 (D. Mass. 1998) (quoting Anastas v. Am. Savings Bank (In re Anastas), 94 F.3d 1280, 1285-86 (9th Cir. 1996)).  Thus, the allegations in subpagraphs (a) and (b) do not provide any factual context to reasonably infer what the Debtor's intention may have been at the time he incurred the charges.  The Debtor filed for chapter 7 bankruptcy on December 15, 2008, and the charges at issue were incurred in early September 2008.  Did the Debtor intend to file bankruptcy in early September?  Did he know bankruptcy was inevitable while he continued to incur debts to FIA?  Or did his finances fall apart unexpectedly sometime after early September 2008?  Subparagraphs (a) and (b) provide no factual basis for the Court to infer what the Debtor intended in early September 2008.  In addition, the Debtor's schedules reflect his financial condition on December 15, 2008, not the dates the charges were incurred, approximately 100 days earlier.

Second, the remaining subparagraphs (c) through (g) summarize FIA's views of the allegations in three prepetition lawsuits and four other adversary proceedings against the Debtor in this Court.  FIA was not the plaintiff in any of the suits identified in the First Amended Complaint.  At best, the allegations in (c) through (g) are allegations that third parties have accused the Debtor of fraudulent conduct or misrepresentations.  While such allegations, if true, might prove conduct consistent with FIA's allegations, they are insufficient under Iqbal because they "stop[] short of the line between possibility and plausibility."  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).  In any event, the practice of incorporating allegations from

pleadings in separate, unrelated cases is suspect. Many courts express doubt about this method given the duties under Federal Rule of Civil Procedure 11.[4]  When drafting complaints, attorneys, of course, may rely in part on other sources as part of their investigations into the facts, but no authority stands for the proposition that an attorney can rely entirely on another complaint as the sole basis for the allegations.  In re Connetics Corp. Sec. Litig., 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008).  While FIA did not rely entirely on one complaint as the sole basis for its allegations, the only new allegations that did not refer to complaints in other cases—subparagraphs (a) and (b)—focused on the wrong standard under § 523(a)(2)(A), as the Court explained above.  Moreover, as the Connetics court explained:

> Under Rule 11(b), an attorney has a "nondelegable responsibility" to "personally . . . validate the truth and legal reasonableness of the papers filed," Pavelic & LeFlore v. Marvel Ent't Group, 493 U.S. 120, 126 [] (1989), and "to conduct a reasonable factual investigation," Christian, 286 F.3d at 1127.  Given that this responsibility cannot be delegated to another member of the attorney's firm, see Pavelic, 493 U.S. at 125-27 [ ], it would make little sense that an attorney "somehow can rely on the analysis of attorneys in different actions and who are presumably from different law firms," Geinko v. Padda, 2002 WL 276236[, at] *6 (N.D. Ill. Feb. 27, 2002).  Here, [the] plaintiffs make no effort to inform the Court what other sources of information besides the SEC complaint and press release they relied on in formulating their specific claims against [the] defendants . . . .

Connetics, 542 F. Supp. 2d at 1005 (while considering a motion to strike and motion to dismiss); see also Davis v. Bifani, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) ("Fed. R. Civ. P. 10(c) permits the Plaintiff to incorporate by reference allegations made within the same pleading, as well as allegations made in other pleadings in the case.  However, the Court does not believe

---

[4] Federal Rule of Bankruptcy Procedure 9011 is the analogue of Rule 11 of the Federal Rules of Civil Procedure.  Thus, "Rule 11 jurisprudence is largely transferable to Rule 9011 cases."  Featherston v. Goldman (In re D.C. Sullivan Co., Inc.), 843 F.2d 596, 598 (1st Cir. 1988).

9

that it is proper to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties."). Aggregating summaries of several third party complaints and incorporating them by reference is simply insufficient. At best they are hearsay or simply FIA's opinion on other suits. They are not allegations of fact by FIA which bear on the Debtor's intent at the time he incurred the charges in early September 2008. Accordingly, without more factual context the Court is unable to draw reasonable inferences to support a plausible claim for relief.

### III.  CONCLUSION

For the reasons set forth above, the First Amended Complaint is hereby DISMISSED. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   December 4, 2009                /s/ J. Michael Deasy
                                        J. Michael Deasy
                                        Bankruptcy Judge